V. D. FOOTE, Respondent, v. L. C. SMITH & BROTHERS TYPE-
WRITER COMPANY, Appellant.

(172 N. W. 833.)

**Sales — contract with selling agent.**

1. In an action on a dealer's contract to handle typewriters, which gives to the dealer the exclusive right to sell certain typewriters for a period of one year, commencing February 27, 1918, and which provides that the Typewriter Company shall deliver to the dealer twelve machines each month during the life of the contract, it is *held* that the latter provision refers not to calendar monthly periods, but to monthly periods measured from the date of the inception of the contract.

**Sales — agency contract — time of deliveries — evidence.**

2. In an action on such dealer's contract to recover for the failure to deliver machines as contracted, where it appears from the record that the con-

43 N. D.—3.

tract provides for its termination at any time upon thirty days' notice from the defendant, and the defendant received and accepted orders for typewriters pursuant to the terms of such contract, until it gave notice of its cancelation, and where the defendant in its answer, and its evidence introduced or offered, relies upon an exception in the contract justifying delay in deliveries where extraordinary conditions unforeseen arise, and upon the extraordinary war conditions and war demands, to which it had been subjected in the manufacture and delivery of machines, it is *held*, upon the record, that there is no showing of obligatory compliance to make deliveries to the plaintiff in view of its acceptance of orders and continuance of the contract.

**Trial — effect of motion by both parties for directed verdict — decision by court.**

3. In such actions where both parties moved for a directed verdict at the close of the case, without reservation, the parties are deemed to have consented to a decision by the court of both questions of law and of fact, and it is deemed immaterial whether the court specifically makes findings of fact or directs a verdict pursuant to the motion of one of the parties.

**Sales — sales agency contract — damages for breach of contract.**

4. In such action, where the trial court directed a verdict for damages, based upon the difference between what the buyer would have paid the seller for each machine plus the express thereupon, and the price that he would have received for each machine, it is *held*, pursuant to § 7153, Comp. Laws 1913, that upon the evidence the proper measure of damages was applied.

Opinion filed May 28, 1919.

Action on dealer's contract for failure to deliver typewriters.

Verdict directed for plaintiff in District Court, Cass County, *Cole, J.*

From judgment entered and motion denying judgment *non obstante,* or, in the alternative, for a new trial, the defendant appeals.

Judgment modified and affirmed.

*M. A. Hildreth,* for appellant.

In any contract where there is no provision whatsoever releasing the party from performance, extraordinary conditions like strikes, destruction of property, fire, or tornado or act of God have almost invariably, excepting in a few instances, been considered sufficient excuse for failure to perform. In contracts where the provision is written in and made a part of the instrument, the authorities are almost uniform that such conditions operate, when once established, to excuse the perform-

ance of the contract, and are a perfect defense upon an action arising for failure to perform thereunder. Lorillard v. Clyde, 142 N. Y. 462 (opinion by Ch. J. Andrews) ; Ott v. Murphy, 141 N. W. 462.   See National Defense Act, pp. 428–430, U. S. Comp. Stat. under the head of Mobilization of Industries; Moore & Tierney v. Roxford Knitting Co. 250 Fed. 282; Cottrell v. Smokeless Fuel Co. 9 L.R.A. (N.S.) 1187; Malcomson v. Wappoo Mills, 88 Fed. 680; Cotrell v. Smokeless F. Co. 129 Fed. 175; Western Hardware Mfg. Co. v. Bancroft C. S. Co. 116 Fed. 176; 9 Cyc. 631–633; Taylor v. Caldwell, 3 Best & S. 833; Howell v. Coupland, L. R. 1 Q. B. Div. 258; Bailey v. DeCrespingy, L. R. 4 Q. B. 185; Dexter v. Norton, 47 N. Y. 64, 7 Am. Rep. 415; Ontario Deciduous Fruit Growers Asso. v. Cutting Fruit Packing Co. 134 Cal. 21, 53 L.R.A. 681, 86 Am. St. Rep. 231, 66 Pac. 29; Stewart v. Stone, 127 N. Y. 500, 14 L.R.A. 215, 28 N. E. 596; Wells v. Sutphin, 64 Kan. 873, 68 Pac. 648; Krause v. Bd. of Trustees, 162 Ind. 278, 65 L.R.A. 111, 102 Am. St. Rep. 203, 70 N. E. 267, 1 Ann. Cas. 460; Berg v. Erickson, 234 Fed. 817; Dunyan v. Culver, 168 Ky. 45, 181 S. W. 640, L.R.A.1916F, 3, note page 10.

The following English cases sustain the doctrine for which we contend, namely, that in time of war impossibility of performance of contract is a perfect defense; Chandler v. Webster, 4 K. B. 493; Kreel v. Henry, 2 K. B. 748.

*Barnett & Richardson,* for respondent.

Appellant, having prevented such sales by nondelivery, prevented the respondent from earning the profits which he would have earned if delivery had been made.   This seems to be the rule applied in the following cases: Young v. Land Co. (N. D.) 122 N. W. 1105; Talbott v. Boyd (N. D.) 88 N. W. 1028.

A shortage of labor, or the difficulty of procuring labor for the purpose of fulfilling a contract, is not a defense for a failure to deliver under the contract.

An exhaustive note on this point is contained in L.R.A.1916F, at page 31.

"It is no excuse for the nonperformance of a contract that it is impossible for the obligor to fulfil it, if the performance be, in its nature, possible. . . .   There is a marked distinction not to be overlooked, in this connection, between a mere disability or inability of a party to

perform a contract, and the absolute and inherent impossibility of performance in the true sense. . . . Unless an act is inherently impossible within itself, a contract to do it is binding, although the performance may be improbable, or even impossible to the promisor. To excuse performance, the impossibility must be simply more than merely a great inconvenience, hardship, or even impracticability." Reid v. Company (Or.) 73 Pac. 337; Piago v. Summerville (Miss.) 80 So. 342.

"There can be no question but that a party may, by an absolute contract, bind himself or itself to perform things which are subsequently impossible, or pay damages for the nonperformance, and such construction is to be put upon an unqualified undertaking, where the event which causes the impossible might have been anticipated and guarded against in the contract, or where the impossibility arises from the act or default of the promisor." Chicago Co. v. Hoyt, 149 U. S. 1; Mahaska Bank v. Brown (Iowa) 141 N. W. 459; see also note in L.R.A.1916F, p. 20, and cases cited.

BRONSON, J. This is an action upon a dealer's contract for failure to deliver typewriters pursuant to the terms of an express contract. Trial was had in the district court of Cass county commencing January 27, 1919, before a jury, and, upon motion made for a directed verdict by both parties, the court directed a verdict for the plaintiff in the sum of $1,542.25. Pursuant thereto judgment was entered on February 27, 1919. From an order thereafter made denying the motion of the defendant for judgment non obstante, or, in the alternative, for a new trial, the defendant has appealed to this court, from such order and from the judgment.

Substantially the facts are as follows:

On February 27, 1918, the parties made a written dealer's contract whereby the plaintiff was granted the exclusive right to deal in typewriting machines and supplies sold or dealt in by the defendant company for a term of one year. It was provided in such contract that the plaintiff agreed to purchase, take delivery of, and pay for, and the defendant agreed to sell and deliver to the plaintiff, twelve machines each month during the life of the contract and a greater number each month as might be ordered by the plaintiff subject to the ability of the defendant to fill such orders in excess of the quantity above mentioned. It was

also provided in this contract that all machines ordered by the plaintiff should be shipped f.o.b., Syracuse, New York, as speedily as possible by the defendant unless prevented by strikes, fires, orders of court, or other extraordinary conditions now unforeseen, or over which the defendant had no control. It was furthermore stipulated that the plaintiff agreed to sell exclusively in the territory specified, typewriting machines of the defendant at prices not less than those set forth in the regular authorized catalogue of the defendant, and that plaintiff should labor diligently during such time for the purpose of selling such machines; that he should establish a place of business in one of the principal cities at his own expense for the sale of such machines, and that he should not deal in, sell, or handle typewriting machines other than those of the defendant excepting second-hand machines taken in exchange as part payment for defendant's typewriters, portable machines, and second-hand typewriters of all makes. It was further stipulated that the plaintiff would employ at his own expense a competent repair man and that he would keep in good repair all of defendant's typewriters sold by him within the territory. It was further stipulated in such contract that either of the parties might terminate the same by giving a written notice of thirty days to that effect.

Pursuant to this contract the plaintiff, who was an experienced typewriter salesman theretofore engaged in business at Grand Forks, removed to Fargo, established an office, employed a repair man, and proceeded to act as a dealer in the machines of the defendant pursuant to the contract. There is no question raised in the record that the plaintiff has not complied with the terms of his contract.

On February 27, the plaintiff ordered 32 typewriters.
On March 1, the plaintiff ordered 1 typewriter.
On March 21, the plaintiff ordered 10 typewriters.
On March 26, the plaintiff ordered 10 typewriters.
On April 11, the plaintiff ordered 2 typewriters.
On April 28, the plaintiff ordered 1 typewriter.
On April 29, the plaintiff ordered 4 typewriters.
On April 30, the plaintiff ordered 10 typewriters.
On May 25, the plaintiff ordered 2 typewriters.
On May 29, the plaintiff ordered 1 typewriter.
On July 11, the plaintiff ordered 10 typewriters.

On July 15, the plaintiff ordered 1 typewriter.

On August 1, the plaintiff ordered 7 typewriters.

The defendant received and accepted these orders.

On July 31, 1918, the defendant gave notice of the cancelation of the contract, effective August 31, 1918. During the life of the contract the defendant delivered only fifty-three machines. The plaintiff claims that under the contract it was the duty of the plaintiff to purchase and the duty of the defendant to deliver, during the period between February 27, 1918, and September 1, 1918, the life of the contract, eighty-four machines. The defendant contends that under such contract the plaintiff was entitled to twelve machines during each thirty days or monthly period commencing February 27, 1918, so that in any event the plaintiff was not entitled to the delivery of more than seventy-two machines. The defendant in its answer alleges that by reason of the state of war existing it was compelled to and did comply with governmental demands in the manufacture and delivery of its typewriting machines. That this required it to send immense quantities of typewriting machines to the United States government, which constituted an extraordinary condition unforeseen, against which the defendant could not provide and which it was unable to foresee. During the course of the trial the defendant asked leave of the court to amend its answer to allege, in effect, that after the making of the contract the parties understood and agreed that delivery should be made under and in view of the war conditions, and not otherwise. The trial court, upon objection made by the plaintiff, denied leave to amend upon the ground that it introduced entirely a new cause of defense. The defendant also offered to prove in the record that by reason of the Draft Act of May 17, 1917, the legitimate force in the manufacturing plant of the defendant was reduced between 50 and 60 per cent so that the output was curtailed, and it became a physical impossibility for the defendants to make delivery of their machines because of the war conditions.

Furthermore, the defendant offered to prove that under the Act of June 3, 1916, the Federal government demanded and required a large portion of their output in preference to private deliveries. This offer of the defendant was refused by the trial court. In the evidence, the plaintiff proved his ability to dispose of all the machines so ordered and

his damages resulting, amounting to $52.50 per machine, less express charges of $2.75 for each machine. As both parties moved for a directed verdict at the conclusion of the trial without reservation, the questions of law and of fact involved were for the court, under the usual rule heretofore followed in this state.

In the specifications of error the defendant raises two principal contentions:

1. That the trial court erred in directing a verdict for the full amount of the claim.

2. That the trial court erred in determining that the defendant had failed to perform its contract in view of the request of the defendant to amend its answer and its offer of evidence to show that the contract, made in war time, was subject to war conditions and governmental demands, and to the inabilities thereby imposed upon the defendant concerning deliveries.

We are satisfied that the contract provision requiring a delivery of twelve machines per month refers not to calendar monthly periods, but to monthly periods measured from the date of the inception of the contract. The contract was originally drawn for a period of five years. This meant sixty months from February 27, 1918, and not sixty-one calendar months, including February at the commencing and February at the end. The contract subsequently was changed to read as to its term for one year instead of five years. This plainly meant a twelve-month period from February 27, 1918, to the same date in the succeeding year. Consequently during that period of time the defendant was bound to furnish 144, not 156, machines, if the contract survived that long. The date of the last order was August 1, 1918. No attempt, as the evidence discloses, was made to compel the defendant to deliver twelve machines between the dates of August 27 and August 31, 1918. The contention of the plaintiff that because there remained four days after the expiration of the monthly contract period therefore plaintiff was entitled to receive twelve machines for that period cannot be sustained. The defendant had thirty days within which to comply with the contract requirements for the delivery of twelve machines. If the contract terminated prior to the expiration of that time by the consent and agreement of the parties, the plaintiff manifestly cannot claim a delivery within a period of time not covered by the contract; for the

defendant had thirty days, not four days, within which to deliver the required machines. We are, therefore, clearly of the opinion that the defendant, pursuant to the contract, was required to deliver only seventy-two machines instead of eighty-four, and that the trial court therefore, in any event, should not have directed a verdict for the plaintiff in excess of damages sustained by reason of the failure to deliver nineteen machines.

We are clearly of the opinion that appellant's second contention cannot be sustained. Neither the evidence offered nor introduced by the defendant make applicable the legal principles and cases cited by the defendant as a legal justification for the nonfulfilment of the contract terms, through war conditions or war necessities, preventing defendant's compliance.

The contract was made after a state of war was existing. Under its terms the defendant had the option to terminate it at any time upon thirty days' notice. If the defendant became heavily burdened by war conditions and governmental requirements, it could readily at any time relieve the plaintiff, as well as itself, from the contract terms by a notice of the cancelation thereof. It chose otherwise to do, at least until August 31, 1918, and to attempt to take care of plaintiff's orders.

The record does not disclose any notice to the plaintiff that the defendant would not and could not make deliveries on account of governmental requirements and war conditions. There was no attempted showing of obligatory compliance with governmental orders which resulted in defendant's involuntary disability to make deliveries.

The fact that the defendant in its rule book of May 15, 1918, stated that the company reserved the right to determine the order in which machine deliveries shall be made, on account of war conditions and government orders, did not operate to relieve the defendant, nor the plaintiff, from the requirement to respectively deliver, and to take, twelve machines every month. If anything, this shows an intention, voluntarily, to continue the contract instead of trying to escape its terms.

Clearly upon this record it must be presumed that the defendant consented to a continuance of this contract, in addition to its government orders, and in connection with the war conditions to which it was subject.

As bearing upon this question, see Moore & Tierney v. Roxford Knitting Co. 250 Fed. 278; Mawhinney v. Millbrook Woolen Mills, 105 Misc. 99, 172 N. Y. Supp. 461; Columbus R. Power & Light Co. v. Columbus, 249 U. S. 399, 63 L. ed. 669, 6 A.L.R. 1648, P.U.R.1919D, 239, 39 Sup. Ct. Rep. 349; Kingsville Cotton Oil Co. v. Dallas Waste Mills, — Tex. Civ. App. —, 210 S. W. 832.

The appellants also contend that, in any event, the trial court erro neously directed a verdict allowing the plaintiff as damages the difference between the selling price of the defendant for each machine, plus the express thereupon, and the retail price at which the plaintiff was required to sell pursuant to the contract. The trial court did not err in this regard. Both parties having made a motion for a directed verdict without reservation, the trial court had the right to determine the facts concerning the damages as well as the law applicable, as the measure thereof. It could do this as well by directing a verdict, pursuant to the motion of one of the parties, as by making findings of fact. Aber v. Twichell, 17 N. D. 229, 116 N. W. 95.

In the evidence there is no particular controversy concerning damages; the plaintiff testified that he always had more than sufficient money with the defendant to pay for the typewriters delivered to him. The defendants specifically objected concerning this testimony, upon the ground that it was irrelevant to the issue whether he paid cash or paid for the goods later on. The plaintiff specifically testified that he would have been able to have disposed of these thirty-one machines, and more if they had been furnished to him. Under this contract the plaintiff was precluded from selling these machines at a lesser price than the price fixed by the defendant. If the machines had been delivered to him he would have received, under the evidence, such price. In such case, the measure of his damages, therefore, is the difference between such price fixed by the defendant, being the value of the typewriter to the buyer, over the amount which would have been due to the defendant, under the contract, if the machines had been delivered, plus the express upon each machine. Comp. Laws 1913, § 7153; Young v. Metcalf Land Co. 18 N. D. 441, 450, 122 N. W. 1101; Talbot v. Boyd, 11 N. D. 81, 85, 88 N. W. 1026. Such rule of damages was properly applied in this case in measuring the profits that the plaintiff would

have received, for the reason that the evidence offered to establish the same was neither uncertain nor speculative. 17 C. J. 788.

We have examined other specifications and contentions made by the defendant, and we determine them to be without merit.

The judgment of the trial court, accordingly, should be reduced so as to read $945.25 instead of $1,542.25. It is so ordered. The appellant will recover costs of this court upon this appeal.

GRACE, J. I concur in the result arrived at by the court in the majority opinion in the above-entitled case.

ROBINSON, J. This is an appeal from a judgment on directed verdict for $1,542.25. The complaint is based on a written contract dated February 27, 1918. The plaintiff agrees to sell typewriting machines for defendant. He agrees to purchase twelve machines a month and defendant agrees to furnish the same from time to time as ordered at a discount of 50 per cent from the list price, payable in cash with the order or C. O. D. The complaint avers that the average profit to plaintiff on each machine was $54.50, which is manifestly untrue. It avers that defendant refused to ship plaintiff twelve machines a month to his damage $1,674.26. The contract was terminated by notice of cancelation on July 31st, to become effective August 31st. During the life of the contract defendant was bound to fill cash or C. O. D. orders for twelve machines a month. The total of all orders was ninety and they were given without cash. They were given on uncertified checks, which are commonly a poor substitute for cash. On such orders defendant shipped fifty-three machines and failed in the shipment of nineteen.

Now the measure of damages was thus: "The excess, if any, of the value of the property to the buyer over the contract price." Comp. Laws, § 7153. The complaint does not state facts or in any way show the damage. It does aver that the average profits upon said machines to the plaintiff was the sum of $54.50, and that by reason of the failure of defendant to comply with the contract the plaintiff suffered damages to the sum of $1,674.26, but that is manifestly untrue, and it does not show "the excess value of the property to the buyer over the contract price." The list price of each machine was from $105 to $117. The plaintiff was bound to sell each machine at half the list

price, to pay freight or express on it from Syracuse, New York, to keep it in repair when sold, and to incur the expense of making sales and the risk of collecting the money. The alleged damage assumes that the machines were sold without any risk or expense. That is manifestly preposterous. The seller of typewriting machines does well when he makes a clear profit of 50 per cent on his investment. Surely he does not make 100 per cent. If machines could be sold at list price, without any trouble, risk, or expense, then for making a sale there would be no occasion for paying half the list price. In directing a verdict the court was manifestly in gross error. Hence the judgment must be reversed and the case remanded for a new trial. It is true that in this case both parties moved for a directed verdict, but as the court did not take the case from the jury and decide it on findings of fact and conclusions of law, the appeal does not make it a court case and warrant this court in trying the case anew. And, in any event, the case must be remanded, because there has been a mistrial. Neither the complaint nor the evidence bears on the proper measure of damages.